IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RED WING AEROPLANE COMPANY,

                    Plaintiff,                        OPINION AND ORDER

    v.
                                                      16-cv-118-wmc

FIDELITY FLIGHT SIMULATION INC.,

                    Defendant.

---

        In this civil action, plaintiff Red Wing Aeroplane Company alleges claims against

defendant Fidelity Flight Simulation, Inc., for breach of contract and fraud arising out of

their failed equipment purchase agreement. Before this court is defendant's motion to

dismiss plaintiff's fraud claim under Federal Rule of Civil Procedure 12(b)(6).  (Dkt.

#10.)  Specifically, defendant contends that Pennsylvania law forecloses any tort remedy

where, as here, the fraud allegations are intertwined with the performance of the

agreement itself. [1]  For the reasons that follow, the court agrees.


                              BACKGROUND[2]

        On June 26, 2013, defendant Fidelity entered into an Equipment Purchase

Agreement ("the Agreement") with plaintiff Red Wing to design and fabricate a Level 6

---

[1] The parties agree that Pennsylvania law governs plaintiff's claims generally.

[2] In deciding this motion to dismiss, the court accepts as true all of the factual allegations made in
Red Wing's complaint.  *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).  Similarly, the court
views the parties' submissions in the light most favorable to the non-moving party, Red Wing.
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Holland v. Jefferson Nat'l
Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989).

flight simulator in compliance with Federal Aviation Administration regulations. On September 15, 2015, Red Wing and Fidelity executed an Addendum to the Agreement, which established criteria and adopted related Change Orders.

As part of the Addendum, the parties stipulated to a new completion date "within 90 days of the Effective Date of this Addendum," including a Factory Acceptance Test ("FAT"). (Compl. (dkt. #1) ¶ 51.) Fidelity also agreed to deliver the completed Simulator to Red Wing "within 110 days from the Effective Date of this Addendum," which worked out to January 3, 2016. (*Id*. at ¶ 54.) Despite this, plaintiff alleges that by January 5, 2016, Fidelity still has not fulfilled either of those deadlines. (*Id*. at ¶¶ 53, 57.)[3]

As for its fraud claim, Red Wing further alleges that during the course of the project, Fidelity fraudulently misrepresented (1) the "simulator was on schedule", (2) "it would be timely completed," and (3) the actual "soundness, and quality of its work." (*Id*. at ¶¶ 59, 62; *see also id*. at ¶ 77 (describing misrepresentations made "[a]fter the parties entered into contract").) Red Wing alleges that Fidelity made misrepresentations about its "knowledge, skill, and experience" in building Level 6 Simulators before entering into the Agreement. (*Id*. at ¶ 10; *see also id*. at ¶ 72 (describing misrepresentations "[b]efore the parties entered into contract").) Finally, Red Wing alleges that Fidelity made all of these pre- and post-contract misrepresentations with "malice, evil motive, oppression, and/or reckless indifference toward Red Wing." (*Id*. at ¶ 83.)

---

[3] Although silent about meeting the FAT deadline, Fidelity represents that *delivery* of the completed simulator actually occurred on January 5, 2016, just two days late. Regardless, Red Wing maintains that the delivery was not "free from any [and] all defects." (*Id*. at ¶ 57.)

In reliance upon these misrepresentations, Red Wing now claims compensatory damages as follows: (1) $240,669.70 paid to Fidelity; (2) $623,487.00 in funds advanced to Fidelity; (3) $91,530.67 in interest paid for the loan; (4) $26,512.50 in bank guarantees fees; (5) $441,473.17 in out-of-pocket costs; (6) lost bonus depreciation for tax credit purposes; (7) lost equipment depreciation; and (8) over $3,750,000.00 in lost revenue. (*Id.* at ¶ 84.) Red Wing also seeks an award of punitive damages. (*Id.*)

OPINION[4]

"A motion to dismiss under the Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief can be granted." *Diamond Center, Inc. v. Leslie's Jewelry Mfg. Corp.*, 562 F. Supp. 2d 1009, 1013 (W.D. Wis. 2008). Taking the facts as alleged in the complaint as true, dismissal is proper when those facts fail to establish the essential elements of the claims pleaded. *Riley v. Vilsack*, 665 F. Supp. 2d 994, 998 (W.D. Wis. 2009). A plaintiff can also plead itself out of court by alleging additional facts in its complaint that demonstrate he or she is not entitled to relief as a matter of law. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008).

Even though the Agreement states that Pennsylvania law applies, choice of law decisions are made on a claim-by-claim basis. Under Wisconsin choice-of-law rules, which control in diversity cases in this court, "[a] choice of law provision will not be construed to govern tort as well as contract disputes unless it is clear that this is what the

---

[4] The court's exercise of diversity jurisdiction over this civil lawsuit is proper because the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

parties intended." *Cerabio LLC v. Wright Med. Tech., Inc.*, 410 F.3d 981, 987 (7th Cir. 2005) (citing *Kuehn v. Children's Hosp.*, 119 F.3d 1296, 1302 (7th Cir. 1997)). Here, the Purchase Agreement between Red Wing and Fidelity provides expansively that it is "governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, but without regard to its conflict of laws principles which would make the laws of any other jurisdiction applicable to this agreement." (Compl., Ex. C (dkt. #1-5) ¶ 13.) Given this language and the parties' agreement that Pennsylvania law applies, the court sees no reason to upset that choice as to all of the claims at issue, including fraud.

As to the merits, Fidelity argues that Red Wing's claim of fraud must be dismissed under Pennsylvania's "gist of the action" doctrine. Although disagreeing on how the doctrine should be applied to the fraud claim here, Red Wing agrees the doctrine is designed to maintain a conceptual distinction between breach of contract and tort by barring a plaintiff from bringing a claim that merely replicates a claim for breach of the underlying contract. *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 123 (3d Cir. 2010) ("[T]he 'gist of the action' doctrine precludes plaintiffs from recasting ordinary breach of contract claims into tort claims." (internal quotation marks and citation excluded)). To bring an action in tort, a plaintiff must show that: (1) defendant breached a duty imposed by tort law, rather than contract law; and (2) the contract is collateral to the tort claim. *See Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541, 548 (3rd Cir. 2010) ("[T]o be construed as a tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral."), *rev'd on other grounds by Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC*, 784 F.3d 177, 186

(3d Cir. 2015). The doctrine is similar to Wisconsin's economic loss doctrine ("ELD"). *See Pediatrix Screening*, 602 F.3d at 544.[5]

If the suit's underlying complaint is that the defendant violated a duty created by mutual agreement in contract, the "gist of the action" doctrine states the claim must be brought under contract law. *See Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104 (3rd Cir. 2001) (limiting a plaintiff to its contract claim when the defendant's obligations are defined by the "terms of the contract, and not by larger social policies embedded in the law of torts"). In applying this doctrine, a court looks to the claim as a whole, not to isolated details, to determine if the "essential grounds" lie within contract or tort. *See id.* at 103 (noting that Pennsylvania courts use two methods to determine whether a tort claim that accompanies a contract claim should be allowed as a freestanding cause of action or rejected as "illegitimate attempts to procure additional damages for a breach of contract: the 'gist of the action' test and the [ELD] test").

In reviewing Pennsylvania court cases, tort claims are barred by the gist of the action doctrine (1) where they "aris[e] solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially

---

[5] The distinction between the two doctrines is largely one of origin: the economic loss doctrine developed in the context of product liability in which the only damage was to a product covered by a contract. *See E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866 (1986). Because non-products liability cases arguably blur the line even more between torts and contracts, some courts have found the gist of the action doctrine to be more appropriate, though it functions essentially the same way. *See Pediatrix Screening*, 602 F.3d at 544 n.5 (noting the gist of the action doctrine was "a better fit for non-products liability cases"); *see also Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104 n.11 (3rd Cir. 2001) (determining that the "gist doctrine" is a better fit for non-products liability cases than the ELD).

duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 19 (Pa. Super. Ct. 2002) (internal citations and quotation marks omitted). Importantly, the doctrine prevents plaintiffs from crafting pleadings to avoid the restrictions on contract claims. *See Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999) ("[T]he gist of the action doctrine cannot be evaded by the mere expedient of pleading that the defendant acted negligently, recklessly, wantonly or intentionally, if the gravamen of the claim is that the plaintiff failed to fulfill a promise.").

In *eToll,* the Superior Court held for the first time that the gist of the action doctrine bars claims for fraud in the performance of a contract. *eToll*, 811 A.2d at 14.[6] That court explained that a "claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts." *Id.* at 14 (citing *Bohler-Uddeholm*, 247 F.3d at 104). Among other allegations, Red Wing alleges here that *after* the parties entered into the Agreement, Fidelity misrepresented the "status, soundness, and quality of its work." (Compl. (dkt. #1) ¶ 77.) Fidelity's obligation to deliver a Level 6 Simulator by a certain day without any defects, however, was based solely on the terms of the parties' contractual obligations. As such, the proposed fraud claim based on *nonperformance* of the contract is unquestionably barred by the gist of the action doctrine.

Perhaps recognizing this predicament, Red Wing's response to the motion to

---

[6] The Pennsylvania Supreme Court has yet to consider or apply the doctrine in the context of fraud claims, but lower state and federal courts predict it will. *Mendelsohn, Dricker & Assoc. v. Titan Atlans Mfg. Inc.*, 885 F. Supp. 2d 767, 787 (E.D. Pa. 2012).

dismiss focuses instead on alleged misrepresentations made *before* entering into the contract. Hanging its hat on a "fraudulent inducement" exception to the gist of the action doctrine, plaintiff then argues that while Pennsylvania's "gist of the action doctrine may bar a tort claim arising under the performance of a contract[,] it does not bar a fraud claim stemming from fraudulent inducement to enter a contract." (Pl.'s Opp'n (dkt. #13) 1 (citing *Mirizio v. Joseph*, 4 A.3d 1073, 1085 (Pa. Super. Ct. 2010)) (internal quotation marks omitted).) As the Pennsylvania Superior court explained in *The Brickman Grp., Ltd. v. CGU Ins. Co.*, 865 A.2d 918 (Pa. Super. Ct. 2004), the law "appears to permit fraud in the inducement claims in disputes involving contractual obligations, notwithstanding that the gist of the action doctrine would bar claims of fraudulent (non)performance." *Id.* at 928.

However, even the fraudulent inducement exception to the gist of the action doctrine has its own limits. Fraud claims are still barred "when the fraudulent statement made during negotiations becomes the basis for a subsequently executed contractual duty." *First United Bank & Trust v. PNC Fin. Servs. Grp., Inc.*, 667 F. Supp. 2d 443, 450 (M.D. Pa. 2009) (citations omitted). As an example, in *DeFabo v. Anderson Windows, Inc.*, 654 F. Supp. 2d 285 (E.D. Pa. 2009), the plaintiff asserted a fraud claim based on the defendant's alleged misrepresentations about its level of expertise before the execution of the contract. The court found that claim barred by the gist of the action doctrine, explaining:

> The allegations in these two Counts [the contract count and the fraud count] are nearly identical. Plaintiff asserts that he contracted for expert services, based on representations by the Home Depot, and those services were not rendered.

> Essentially, as evidence of the falsity of the Home Depot's representations, Plaintiff is relying on the Home Depot's inability to carry out its contractual allegations. These Counts are clearly intertwined and inseparable.

*Id.* at 291; *see also Bryan's Quality Plus, LLC v. Shaffer Builders, Inc.*, No. 07–CV–2311, 2008 WL 3523935, at *4 (E.D. Pa. Aug. 12, 2008) (dismissing fraud claim where the alleged misrepresentations "involve matters that became contractual duties" concerning deadlines and quality of work); *Tier1 Innovation, LLC v. Expert Tech. Grp., LP*, No. CIV.A. 06CV04622, 2007 WL 1377664, at *4 (E.D. Pa. May 8, 2007) ("[Plaintiff's] allegations of fraud and negligent misrepresentation are both "inextricably intertwined" with [defendant's] alleged failure to perform under the contract, as the claims pertain to [defendant's] representations regarding its expertise and ability to perform its duties under the agreement between the parties."); *KSM Assoc., Inc. v. ACS State Healthcare, LLC*, No. Civ.A. 05-4118, 2006 WL 847786, at *4 (E.D. Pa. Mar. 30, 2006) (finding fraud in inducement counterclaim barred by the gist of the action doctrine, where the alleged fraud was based on KSM's misrepresentation that it had the "skill, experience and/or personnel" to fulfill its contractual obligations); *Galdieri v. Monsanto Co.*, 245 F. Supp. 2d 636 (E.D. Pa. 2002) (dismissing the plaintiff's fraudulent inducement claim under the gist of the action doctrine where the alleged fraud was that the defendant never intended to perform).[7]

---

[7] Plaintiff cites a string of cases where courts have allowed a fraud in the inducement claim but ignores that the source of the obligations underlying the fraud claim are external to any contractual duties and are instead based on social policy considerations. *See Sullivan v. Chartwell Inv. Partners, LP*, 2005 PA Super 124, ¶ 26, 873 A.2d 710, 719 (2005) (relying on misrepresentations made with respect to severance package did not relate to defendant's failure to perform its obligations under the contract); *The Brickman Grp., Ltd. v. CGU Ins. Co.*, 865 A.2d at

Here, plaintiff's allegations concerning Fidelity's alleged statements during the course of negotiations about its "knowledge, skill, and experience" in constructing a Level 6 Simulator became the basis for the subsequent Agreement. As such, plaintiff's fraud claim based on statements made during negotiations are barred by the gist of the action doctrine. As the district court explained in *Galdieri*, a plaintiff's "breach of contract claim cannot be bootstrapped into a fraud claim merely by adding the words 'fraudulently induced' or alleging the contracting parties never intended to perform." *Id.* at 650 (internal citation and quotation marks omitted).

Even taking the facts in favor of Red Wing, as the non-moving party, the allegations of fraud in Count II of the complaint: (1) arise from the contract between the two parties; (2) regard the duty to deliver a working Level 6 Simulator on time, which was not only part of, but the *essence* of the parties' contract; and (3) concern negotiations related to that contract or performance of that contract. As such, the success of the tort claim is inextricably "interwoven" or dependent on the terms of the contract. Similarly, the narrow "fraud in the inducement" exception does not apply because there is no overarching public policy interest or statutorily-mandated obligation layered over the

---

930 (finding alleged fraud collateral to insurance contract); *Mirizio*, 4 A.3d at 1085 (sustaining jury's finding on fraud claim based on land contract purchases). In this case, there are no larger social policy concerns underlying plaintiff's allegations of fraud in the inducement, or at least plaintiff has failed to articulate one.

commercial contract to purchase a flight simulator.[8]  Accordingly, the court will grant defendant's motion to strike Count II of the complaint.


ORDER

IT IS ORDERED that defendant Fidelity Flight Simulation, Inc.'s motion to dismiss Count II of the complaint (dkt. #10) is GRANTED.

Entered this 6th day of May, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[8] To the extent that Fidelity had some obligation under the FAA or some other government regulatory body, Red Wing fails to allege that obligation as a separate basis for asserting a fraud claim, likely because it gives rise to no independent duty.